FANNIE TURNER

*v.*

JAMES H. DAVENPORT and JESSE C. TURNER.

[Filed November 26th, 1900.]

1. The last clause of section 14 of the Married Woman's act of March 27th, 1874 (*Gen. Stat. p. 2015*), declaring that nothing in the act should "enable husband and wife to contract with or to sue each other except as heretofore," is not repealed by the amendatory act of June 13th, 1898. *Gen. Stat. p. 2017.*

2. Compensation for services rendered by a wife to her husband, or to a firm in which her husband is a partner in a business conducted by him or his firm, under a contract of employment made between her and her husband, cannot be enforced by a bill in equity.

61   18
r63  288
s63  289
63   290

Turner *v.* Davenport.

*Mr. Walter J. Knight,* for the complainant *ex parte.*

MAGIE, CHANCELLOR.

The bill in this cause was filed by Fannie Turner, a married woman, by a next friend, against her husband, Jesse C. Turner, and one James H. Davenport. It seeks a decree requiring defendants to pay her certain sums of money. The relief thus asked is put upon the following charges, viz.: That the defendants were partners in business, engaged in selling mantels, tiles, &c.; that Turner, complainant's husband, was manager of the firm and actively employed in the business; that he engaged complainant to enter the service of the firm as a saleswoman; that no amount of compensation for such services was fixed but it was agreed that the complainant should be paid such compensation as others usually received for such services; that the complainant rendered such services for a long period, with the knowledge of Davenport and the other defendant, and that complainant thereby earned at least the sum of $10 per week. The bill further claims a small amount to be due her for service rendered to the firm after she had quitted its employment as saleswoman, in making sales of its goods on commission, under the employment of her husband.

Service of the subpœna issued in the cause was duly acknowledged by solicitors in behalf of both defendants. No plea, answer or demurrer has been filed. A decree *pro confesso* and an order directing complainant to produce proofs sustaining the allegations of the bill were therefore made.

Upon the coming in of the proofs, application was made for a final decree, but the matter appearing to present a novel question, counsel for the complainant was directed to submit a brief, which he has done.

The proofs substantially support the allegations of the bill, and in addition show that the sum of $10 per week is within the usual charge for such services as complainant rendered for the firm as saleswoman, and that the charge for commissions on sales is such as is usually paid to agents.

The contention of counsel in support of the decree asked for is thus presented. He concedes that no such employment would

have raised a liability upon which an action at law could be maintained. He further concedes that the broad power conferred upon married women by section 5 of the "Act to amend the law relating to the property. of married women" [Revision], approved March 27th, 1874 (*Gen. Stat. p. 2012*), did not extend to the employment in question so as to permit any action at law thereon, because the grant was restrained by the express declaration of the last clause of section 14, to the effect that nothing in the act should "enable husband and wife to contract with or to sue each other except as heretofore."

Such has been the uniform construction of the courts. *Woodruff* v. *Clark, 13 Vr. 198; Farmer* v. *Farmer, 12 Stew. Eq. 211; Ireland* v. *Ireland, 16 Stew. Eq. 313; Wood* v. *Chetwood, 17 Stew. Eq. 66; S. C., 18 Stew. Eq. 369; Gould* v. *Gould, 8 Stew. Eq. 37; S. C., 8 Stew. Eq. 562; Brewster* v. *National Bank, 20 Vr. 231.*

Counsel's contention, however, is that the act amendatory of the Married Woman's act, passed June 12th, 1895 (*Gen. Stat. p. 2017*), has repealed the last clause of section 14.

The amendatory act in question is designed to amend section 5 of the original act in two particulars. In the particular now under consideration, the amendment is thus effected. The original section read, "that any married woman shall, after the passing of this act, have the right to bind herself by contract in the same manner and to the same extent as if she were unmarried, which contracts shall be legal and obligatory and may be enforced at law or in equity," &c.

By the amendatory act the words "with any person" were inserted so as to make it read thus: "That any married woman shall, after the passing of this act, have the right to bind herself by contract with any person in the same manner and to the same extent as if she were unmarried, which contracts shall be legal and obligatory and may be enforced at law or in equity."

The amendments made were contained in the first section of the amendatory act. There was a second section which contained a repealer of all acts and parts of acts inconsistent therewith. The argument is that the insertion of the words

"with any person," indicates a legislative intent to allow a married woman to contract with her husband as well as any other person, and so operates to repeal the restriction upon such a contract contained in the last clause of section 14.

The Married Woman's act had been declared in this court not to have abrogated the ancient doctrine that husband and wife are but one person in the eye of the law, whose contracts with each other were subjects of jurisdiction in the courts of equity alone. *Alpaugh* v. *Wilson, 7 Dick. Ch. Rep. 424.* The decree in that case was affirmed in the court of errors upon the opinion below. *S. C., 7 Dick. Ch. Rep. 589.*

If the construction contended for is adopted it indicates a legislative intent to alter the marital relation in this respect. They are thenceforth to be two persons, having unrestricted power to contract with each other. But another consequence must also follow. Not only may husband and wife contract with each other, but the wife may have her action at law against her husband; because if the restraint of the last clause of section 14 has been withdrawn, she has the unlimited power conferred by section 5 in these words, "which contracts shall be legal and obligatory and may be enforced at law or in equity by * * * such married woman in her own name," &c.

Upon this construction of the Married Woman's act, it will follow that not only was complainant not required, as before, to resort to a bill in equity to enforce contracts made with her husband, but a resort to equity was wholly inappropriate, because she had a complete remedy in an action at law.

That this legislation has produced such a radical change in the relation of husband and wife has not been generally recognized. The construction contended for is not admissible.

The effect of such amendments as are now under consideration has been considered both in the supreme court and in the court of errors. In the supreme court the doctrine laid down in *Endlich on Statutes,* in these words, "a statute which is amended is thenceforth, and as to all acts subsequently done to be considered as if the amendment had always been there, and the amendment itself so thoroughly becomes part of the original statute, that it must be construed in view of the original

statute as it stands after the amendments are introduced and the matter superseded by the amendments eliminated," was approved as a correct expression of the law in *Farrell* v. *State, 25 Vr. 421.*

The doctrine thus stated was spoken of by Mr. Justice Depue as the undisputed rule in his opinion in the court of errors in *Barnaby* v. *Bradley and Currier Co., 31 Vr. 158.*

Applying this doctrine it is obvious that the amendments introduced into section 5 of the Married Woman's act in 1895, did not repeal the last clause of section 14 prohibiting husband and wife from making contracts with or suing each other except as heretofore. Vice-Chancellor Emery has reached the same conclusion and expressed it in a memorandum in *First National Bank* v. *Albertson.*

But this conclusion does not dispose of the case under consideration. For, if the contract of a wife with her husband, set up and proved in this case, is not one included in the grant of contractual power contained in section 5 as amended in 1895, it may yet be enforceable in equity. Whether enforceable or not will depend upon whether it was a contract which, before the passage of the Married Woman's act, a court of equity would recognize and enforce although made between husband and wife.

Equity will require a husband to account for the principal of his wife's estate received by him (*Jones* v. *Davenport, 17 Stew. Eq. 33; Wood* v. *Chetwood, 17 Stew. Eq. 64; S. C., 18 Stew. Eq. 369*), and a wife to reimburse a husband from her separate estate for moneys loaned her or applied by him for the benefit of her separate estate. *Healey* v. *Healey, 3 Dick. Ch. Rep. 239.* A firm of which the husband was a member may be held liable in equity to a wife who had loaned money to the firm. *Gould* v. *Gould, 8 Stew. Eq. 37; S. C., 8 Stew. Eq. 562.*

It is to be observed that the services rendered by the complainant to the firm of which her husband was a member, were not within the line of those household services which the relation of wife to husband requires the wife to render; they were services outside of the family and tended to the benefit of the firm of which he was a member.

Turner *v.* Davenport.

It is not contended that the equitable liability arose by implication from the rendition of such services, but the employment and the services rendered thereon was upon an express undertaking to pay the usual compensation.

The question, then, is whether equity will enforce an express undertaking to pay for the value of such services.

That a wife may employ her husband as her agent to conduct and manage a business established by her capital is thoroughly settled. *Taylor* v. *Wands, 10 Dick. Ch. Rep. 491; Arnold* v. *Talcott, 10 Dick. Ch. Rep. 519.* Whether and how the husband could enforce the payment of compensation for services rendered under such employment, has not been, so far as I am aware, the subject of judicial consideration. It may be plausibly argued that for the same reason a husband, whose capital is employed in business, may employ his wife to serve outside of her ordinary family and marital duties in the said business. If so, the question is, whether the wife may enforce a liability for her compensation by a bill in equity.

But the husband's right to wages and earnings stands on a different footing from that of the wife. He has always had unrestrained power to contract and render service, and compensation therefor was his absolute right. Nothing, however, is better settled than that, at common law, the wages and earnings of a married woman became, or could become, the absolute property of the husband. The money due her for services was a chose in action which he could reduce to possession in the manner pointed out by Chancellor Zabriskie, speaking for the court of errors in *Peterson* v. *Mulford, 7 Vr. 481.* The husband could refuse to reduce to possession the right of the wife to compensation for her services, and could permit her to take her own earnings, which she could appropriate to her own use, and they could be thus appropriated and held by her against her husband's creditors. *Skillman* v. *Skillman, 2 Beas. 403; S. C., 2 McCart. 478; Bedford* v. *Crane, 1 C. E. Gr. 265; Stall* v. *Fulton, 1 Vr. 430; Quidort's Adms.* v. *Pergeaux, 3 C. E. Gr. 472; National Bank* v. *Sprague, 5 C. E. Gr. 13; Peterson* v. *Mulford, ubi supra; Clinton Station Manufacturing Co.* v. *Hummell, 10 C. E. Gr. 45.*

Turner *v.* Davenport.

By the provisions of section 4 of the Married Woman's act it is provided that the "wages and earnings of any married woman acquired or gained by her * * * in any employment * * * in which she is employed and which she carries on separately from her husband * * * shall be her sole and separate property as though she were a single woman."

While the words seem to limit what becomes the wife's property to earnings acquired, they may probably be construed as conferring power to acquire by suit earnings due her for services rendered and not paid for. But assuming that the statute has deprived the husband of the right to reduce to possession the earnings of the wife when employed by another person, and has conferred upon the married woman power to sue for and recover compensation for her services rendered to third persons, does it authorize her to contract with her husband for services, or to enforce payment or compensation from him? Had the husband paid the wife for her services in this case, I have no doubt that the money would have at once become her property under the statute and under the law as construed by our courts.

But the clause of section 14 which we have considered and deemed to be still in force, forbids contracts between husband and wife, or suits of one against the other except such as previously could be made or brought. The right to wages in this case arose out of a contract unenforceable at law. A bill in equity for the wife's earnings under the employment of her husband was not one which could have been previously maintained, because those earnings arose out of a contract between her and her husband and had not been given to her. If the contract between them established a chose in action, it was one which the husband could, prior to the passage of the act, reduce to possession and hold absolutely, and a bill in equity would not lie therefor; for it would be absurd to say that the husband, having the earnings of his wife in his pocket and refusing to pay them to her, had not reduced them to possession. It follows that the provisions of section 4 cannot relate to wages and earnings of a wife under the employment of her husband, unless

in case he voluntarily pays them to her. If he declines to pay, she is remediless.

The result is that the bill and proofs present no ground for a decree.